UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CONFECTIONERY COMPANY, INC., ) ) ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. |
| ALLIED INTERNATIONAL CORPORATION OF VIRGINIA, ) ) ) | |
| Defendant. ) | |

## VERIFIED COMPLAINT

Plaintiff New England Confectionery Company, Inc. ("NECCO"), by and through its

attorneys, Burns & Levinson, LLP, and complaining of the Defendant Allied International

Corporation of Virginia ("Allied"), alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for monetary damages arising out of the ongoing defaults by

Allied of substantial payment obligations to NECCO and the repeated fraudulent representations

made by Allied to induce NECCO to continue the parties' business relationship.  As of the date

of this filing, Allied is in default of its payment obligations to NECCO in excess of $375,000.00.

### PARTIES

2.      NECCO is a Delaware corporation registered to do business in the

Commonwealth of Massachusetts with a principal place of business at 135 American Legion

Highway, Revere, Massachusetts.

3.      Allied is, upon information and belief, a Virginia corporation with a principal

place of business at 22570 Markey Court, Suite 108, Dulles, Virginia.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over NECCO's claims pursuant to 28 U.S.C. § 1332. Specifically, there is complete diversity between the parties and NECCO's claim exceeds the jurisdictional monetary requirement.

5.      This Court has personal jurisdiction over Allied pursuant to the Massachusetts Long Arm Statute, Mass. Gen. Laws c. 223A, § 3 because Allied, by virtue of its ongoing business relationship with NECCO (over twenty years of purchasing, paying for and picking up product from NECCO which at all times relevant hereto has been located in Massachusetts) and its various contacts with Massachusetts (including, but not limited to, attending business meetings with NECCO in Massachusetts, entering into verbal agreements with NECCO in Massachusetts, and ongoing, extensive communications with NECCO in Massachusetts) in the context of that business relationship, as well as having business relationships with other customers in Massachusetts.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) or (3).

## STATEMENT OF THE CASE

7.      At all times relevant hereto, NECCO has been engaged in the business of manufacturing and distributing high-quality candy products.

8.      At all times relevant hereto, upon information and belief, Allied has provided packaged food and non-food products to discount and other various markets throughout the world, including, upon information and belief, Massachusetts.

9.      NECCO and Allied have been engaged in a business relationship for approximately twenty years, whereby Allied has served as a broker to facilitate the sale of NECCO products to end customers (i.e., retail stores) located throughout the United States.

01697760.DOCX\

10.     At all times relevant hereto, NECCO has invoiced Allied for purchase orders submitted by Allied for NECCO product, which product is picked by Allied from NECCO's Massachusetts facility.  The subject invoices are attached hereto as Exhibit 1.

11.     Allied is obligated to pay invoices in full within the terms specified on the invoices.  See Exhibit 1.

12.     At all times relevant hereto, NECCO managed Allied's open unsecured credit on received but not yet shipped purchase orders and open receivables.  This includes NECCO's management's routine review of data, such as audited financial statements, ordering frequency and patterns, payment timeliness relative to granted terms and level of deductions taken by Allied in those payments, so as to ascertain an appropriate level of unsecured credit NECCO should grant to Allied on an ongoing basis.

13.     Commencing in or around October 2011 and continuing through February 2012, Allied repeatedly ran up against and exceeded its unsecured credit with NECCO.  Allied did so knowing that NECCO was being forced to decide between rightfully withholding product from Allied, on the one hand, and harming NECCO's marketplace good will and incurring financial losses due to the disruption in service to an end customer, Dollar General, on the other.

14.     Commencing in or around October 2011 and continuing through February 2012, Allied, through its representative Chad Akhavan, threatened that, if NECCO exercised its right to withhold product and/or ship directly to Dollar General, Allied would seek to materially harm NECCO's business through, but not limited to, flooding the market with knock-off product that would compete directly with the NECCO brand.  Allied made these extortionate threats in order to coerce NECCO to continue to deal through Allied.

15.     Commencing in or around October 2011 and continuing through February 2012,

3

Allied failed and refused to respond to NECCO's repeated requests for audited financial statements.

16.     Commencing in or around October 2011 and continuing through February 2012, during a time it was on routine notice it was exceeding its credit limit and during a time it was well aware it was not fulfilling NECCO's repeated requests for financials information, Allied was simultaneously taking increased, unwarranted deductions from open receivables, often with insufficient documentation.  In some instances these deductions related to activities that were over two years aged.

17.     Commencing in or around October 2011 and continuing through February 2012, there were several service disruptions to NECCO's end customer, Dollar General, as a result of Allied's defaults of its payment obligations and exceeding the credit limit.

18.     As a result of the foregoing, NECCO was forced to manage Allied on an order-to-order and day-to-day basis.

19.     In or around February 2012, in order to prevent loss of substantial business to Dollar General due to continued and ongoing service interruptions caused by Allied, NECCO exercised its right to move the Allied account to direct delivery to Dollar General.

20.     In or around February 2012, in order to induce NECCO to release product to Allied despite its then-present exceeding of the unsecured credit limit and ongoing and repeated threats to materially harm NECCO's business through flooding the market with cheap product, winning distribution from NECCO and other means, Allied represented to NECCO that Allied would make payment to NECCO by wire transfer by a date certain.

21.     In reasonable reliance upon Allied's promise to pay, NECCO released product to Allied despite its then-present exceeding of the unsecured credit limit.

22.     Allied knew its representations to be false at the time it made them.

23.     Allied intended NECCO to rely upon Allied's representations and, as a result of that reasonable reliance, to release NECCO product to Allied.  Allied would therefore profit from the shipment of NECCO product for which it had no intention of paying.

24.     Allied failed to make the promised payment and other payments to NECCO.

25.     As of the date of filing this Verified Complaint, Allied owes NECCO $378,532.44 on unpaid invoices on purchase orders during the period of January 11, 2012 through present, net of any and all adjustments and credits to which Allied might be entitled, as set forth in Exhibit 1 hereto.  Allied has not disputed and cannot dispute the validity of the services provided by NECCO or the amount of monies owed.

<u>CAUSES OF ACTION</u>

**<u>COUNT I</u>**
**(Breach of Contract)**

26.     NECCO repeats and realleges the allegations contained in the preceding paragraphs of the Verified Complaint as if fully set forth at length herein.

27.     The purchase orders and invoices constitute enforceable contracts.

28.     By its conduct, Allied has materially breached the terms of those contracts.

29.     As a direct, proximate and foreseeable result of Allied's breaches of contract, NECCO has suffered and will continue to suffer harm.

30.     Allied is liable in the amount of all damages NECCO has sustained on account of Allied's breaches of contract, together with interest, costs and attorney's fees.

**<u>COUNT II</u>**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

31.     NECCO repeats and realleges the allegations contained in the preceding

01697760.DOCX\

paragraphs of the Verified Complaint as if fully set forth at length herein.

32.     A covenant of good faith and fair dealing exists in all contracts including the
invoices and purchase orders.

33.     By its conduct, Allied has breached the covenant of good faith and fair dealing
implied in those contracts.

34.     As a direct, proximate and foreseeable result of Allied's breaches of the implied
covenant of good faith and fair dealing, NECCO has suffered and will continue to suffer harm.

35.     Allied is liable in the amount of all damages NECCO has sustained on account of
Allied's breaches of the implied covenant of good faith and fair dealing, together with interest,
costs and attorney's fees.

## COUNT III
### (Money Due On Account/Account Annexed)

36.     NECCO repeats and realleges the allegations contained in the preceding
paragraphs of the Verified Complaint as if fully set forth at length herein.

37.     Allied owes NECCO $378,532.44 according to the account annexed hereto as
Exhibit 1.

## COUNT IV
### (Promissory Estoppel)

38.     NECCO repeats and realleges the allegations contained in the preceding
paragraphs of the Verified Complaint as if fully set forth at length herein.

39.     Allied promised NECCO that Allied would pay NECCO for product in
accordance with the purchase orders and invoices.

40.     NECCO reasonably relied on Allied's promises to pay.

41.     Allied breached its promises to pay NECCO in accordance with the purchase
orders and invoices.

01697760.DOCX\

42.     NECCO suffered a detriment as a result of its reasonable reliance on Allied's promises.

43.     As a direct, proximate and foreseeable result of NECCO's reasonable reliance on Allied's promises to pay, NECCO has suffered and will continue to suffer harm.

44.     Injustice only can be avoided by enforcing Allied's promises.

45.     Allied is liable in the amount of all damages NECCO has sustained on account of Allied's breach of its promises to pay NECCO for NECCO product which Allied received, together with interest, costs and attorney's fees.

### COUNT V
### (Unjust Enrichment)

46.     NECCO repeats and realleges the allegations contained in the preceding paragraphs of the Verified Complaint as if fully set forth at length herein.

47.     NECCO has conferred a benefit upon Allied, i.e., NECCO product received by Allied for which Allied has not paid NECCO.

48.     There is an appreciation or knowledge by Allied of this benefit conferred by NECCO.

49.     Allied has accepted the benefit under such circumstances as to make it inequitable for Allied to retain the benefit without payment of its value.

### COUNT VI
### (Fraud/Fraud in the Inducement)

50.     NECCO repeats and realleges the allegations contained in the preceding paragraphs of the Verified Complaint as if fully set forth at length herein.

51.     Allied made material false representations to NECCO concerning Allied's intent to pay NECCO amounts owed by Allied.

52.     These false representations were made intentionally, with knowledge of their

falsity.

53.     These representations were made with the intent to deceive and defraud NECCO.

54.     To its detriment, NECCO reasonably relied upon the representations made by Allied.

55.     As a direct, proximate and foreseeable result of Allied's knowingly false representations, which induced NECCO to continue to release product to Allied, NECCO has suffered and will continue to suffer harm.

56.     Allied is liable in the amount of all damages NECCO has sustained on account of Allied's fraud and fraudulent inducement of NECCO into continuing to release product to Allied, together with interest, costs and attorney's fees.

## COUNT VII
### (Violation of M.G.L. c. 93A)

57.     NECCO repeats and realleges the allegations contained in the preceding paragraphs of the Verified Complaint as if fully set forth at length herein.

58.     At all times relevant hereto, NECCO and Allied have been engaged in business and commerce within the meaning of M.G.L. c. 93A, § 11.

59.     The conduct of Allied, in making knowingly false representations to NECCO in order to induce NECCO to continue to release product to Allied despite Allied's failure and refusal to comply with its payment obligations, constitutes unfair and deceptive practices in trade and commerce, in violation of M.G.L. c. 93A, § 2 and § 11.

60.     The conduct of Allied, in coercively and extortionately attempting to extract concessions from NECCO by threatening to seek to materially harm NECCO's business, so as to force NECCO to continue dealing with Allied and to limit NECCO's contractual rights, constitutes unfair and deceptive practices in trade and commerce, in violation of M.G.L. c. 93A,

01697760.DOCX\

§ 2 and § 11.

61.     Allied's unfair and deceptive acts and practices as described above and/or otherwise have taken place primarily and substantially in Massachusetts, with the harm to NECCO occurring exclusively in Massachusetts.

62.     Allied's unfair and deceptive acts and practices as described above and/or otherwise were engaged in knowingly and willfully.

63.     As a direct, proximate and foreseeable result of Allied's unfair and deceptive acts and practices as described above and/or otherwise, NECCO has suffered and will continue to suffer harm.

64.     Allied is liable in the amount of all damages NECCO has sustained on account of Allied's unfair and deceptive acts and practices, plus a trebling of those damages, together with interest, costs and attorney's fees.

### PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff New England Confectionery Company, Inc. respectfully requests that this Honorable Court:

A.     Enter a judgment in favor of Plaintiff New England Confectionery Company, Inc. on all counts of this Verified Complaint;

B.     Award Plaintiff New England Confectionery Company, Inc. all damages it proves at trial to have suffered as a result of Defendant Allied International Corporation of Virginia's conduct;

C.     Award Plaintiff New England Confectionery Company, Inc. no less than double and up to treble all damages it proves at trial to have suffered as a result of Defendant Allied International Corporation of Virginia's knowing and willful violations of M.G.L. c. 93A;

D.     Award Plaintiff New England Confectionery Company, Inc. all costs, expenses and attorneys' fees it incurs in prosecuting this matter; and

01697760.DOCX\

E.      Award Plaintiff New England Confectionery Company, Inc. such other and
further relief that justice so requires.

Respectfully submitted,

**NEW ENGLAND CONFECTIONERY COMPANY,
INC.**

By its attorneys,


/s/ *Elizabeth Brady Murillo*
Thomas T. Reith (BBO #648671)
treith@burnslev.com
Elizabeth Brady Murillo (BBO #661397)
emurillo@burnslev.com
Burns & Levinson LLP
125 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-3000
Dated:  March 30, 2012        Facsimile: (617) 345-3299

## <u>VERIFICATION</u>

I, Alan Gulachenski, hereby depose and say that I am the Chief Executive Officer of

Plaintiff New England Confectionery Company, Inc., that I have reviewed the foregoing Verified

Complaint, and that the averments set forth therein are true to the best of my knowledge,

information and belief.

Signed under the penalties of perjury this 30th day of March, 2012.


/s/ *Alan Gulachenski*
Alan Gulachenski